## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| PERLA CARR, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-13-2795 |
| | § | |
| MONTGOMERY COUNTY, TEXAS, *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

### MEMORANDUM OPINION & ORDER

Pending before the court is defendants' motion to dismiss (Dkt. 19). Having considered the motion, response, reply, and all applicable law, defendants' motion to dismiss (Dkt. 19) is GRANTED IN PART and DENIED IN PART.

### I. BACKGROUND

Plaintiff Perla Carr's home was the subject of a narcotics search by Montgomery County Precinct 4 Constable's Office on September 22, 2011. Dkt. 15-2 at 3. According to plaintiff, officers forced their way into the home without a warrant nor justification for a warrantless search of her home. *Id.* A laser sight was pointed at plaintiff as she was seized from her home, and she was then placed in handcuffs and detained outside the residence while her home was searched. *Id.* at 4. She alleges that the officers at her home conspired with the district attorney's office to fabricate facts to try to justify breaking into the home, and they obtained a search warrant only after they searched the entire home and found evidence. *Id.* at 3–5. During the search, officers brought a third party with a video camera into plaintiff's home who filmed the search and seizure. *Id.* at 3–4. Later, footage from the search was allegedly available online. Dkts. 15-2 at 7. After the search, plaintiff was charged with felony marijuana possession. Plaintiff's son was also at the home at the time of the

search.  *Id.* at 4.  The son was arrested and charged with felony marijuana possession, at which point the son became plaintiff's co-defendant.  *Id.* at 6.  Prior to the dismissal of plaintiff's marijuana charges, her co-defendant moved to suppress evidence found during the search of plaintiff's home.  *Id.* at 7.  The motion to suppress was denied at the conclusion of a suppression hearing and, subsequently, the co-defendant pled guilty to the charges.  Dkts. 15-5 at 134, 19-10.  The charges against plaintiff were dismissed on May 10, 2012.  *Id.* at 6.

On September 11, 2013, plaintiff brought this suit pursuant to 42 U.S.C.A. § 1983 ("§ 1983") and has since amended her claims.  Dkt. 15-2.  Plaintiff brings several claims against Montgomery County and the following people in their individual capacity: Montgomery County Precinct 4 Constable Kenneth Hayden ("Hayden"); Constable's employees Barry Welch ("Welch"); Joshua Bergland ("Bergland"); Arturo Looza ("Looza"); and Eric McHugh ("McHugh"); and Montgomery County district attorney Brett Ligon ("Ligon") and Phil Grant ("Grant").

Plaintiff alleges that defendants violated her Fourth Amendment rights when they 1) Broke into plaintiff's home without a warrant or exigent circumstances and detaining her without probable cause; 2) Invited a camera man to join the search who filmed plaintiff and later publicized that footage; 3) Used excessive force against plaintiff during the seizure; 4) Justified the initial search and later-obtained warrant on false, fabricated information; and 5) Continued to prosecute plaintiff based on false information from officers.  Plaintiff alleges that defendants violated her Fifth Amendment due process rights when they 1) Conspired together to illegally break into and search her home; 2) Gave false statements to support a search warrant in her co-defendant's suppression hearing; 3) Failed to produce exculpatory video footage from the incident during plaintiff's prosecution; and 4) Now assert res judicata and estoppel defenses against her claims before this

court.  *Id.* at 9–10.  Plaintiff pleads that Hayden and others have supervisory liability for the acts that occurred at her home, and that Hayden has particular supervisory liability for failing to supervise his officers who brought a third party unrelated to the search into her home.  *Id.* at 10.  Plaintiff asserts that Montgomery County is liable because Hayden and Ligon are policymakers who were aware of the policy or custom of illegal acts that occurred at plaintiff's home and after, and which violated plaintiff's constitutional rights.  *Id.* at 11.

Defendants filed a motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) based on the *Rooker-Feldman* doctrine, and pursuant to Federal Rule of Civil Procedure 12(b)(6) based on 1) collateral estoppel, and 2) failure to state a claim upon which relief can be granted due to qualified immunity.  The motion has been responded to and is ripe for review.

## II. LEGAL STANDARDS, BACKGROUND LAW & PRELIMINARY ANALYSIS

### A.    *12(b)1 Motion to Dismiss for Lack of Jurisdiction*

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate the case."  *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).  Parties may use this rule to challenge the subject matter jurisdiction of the district court to hear a case.  *Ramming v. U.S.*, 284 F.3d 158, 161  (5th Cir. 2001).  The burden of proof in such a challenge is on the party asserting jurisdiction.  *Id.*  "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."  *Id.*  "A motion under 12(b)(1) should be granted only if it appears certain that the plaintiff

cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders*, 143 F.3d at 1010.

### B. 12(b)6 Motion to Dismiss for Failure to State a Claim

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. As part of the *Twombly-Iqbal* analysis, the court proceeds in two steps. First, the court separates legal conclusions from well-pled facts. *Iqbal*, 556 U.S. at 678–79. Second, the court reviews the well-pled factual allegations, assumes they are true, and then determines whether they "plausibly give rise to an entitlement of relief." *Id.* at 679.

### C. 42 U.S.C. § 1983

State actors are subject to civil liability when, "under color of any statute, ordinance, regulation, custom, or usage, of any State," that official subjects, or causes to be subjected, a person "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. For a plaintiff to state a claim under § 1983 he "must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting

under color of state law." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005).

Public officials sued in their personal capacity for money damages under § 1983 may be able to

assert a common-law defense of absolute or qualified immunity from suit. *Imbler v. Pachtman*, 424

U.S. 409, 418–19, 96 S. Ct. 984 (1976). Further, to hold the county or an employee's supervisor

liable, plaintiff must plead facts to establish the actual liability of the county or the supervisor, as

neither can be held vicariously liable for an employee's actions under § 1983. *Monell v. Dep't of*

*Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018 (1978); *Estate of Davis ex rel. McCully v. City of*

*North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).

### D.      *Immunity*

Prosecutors enjoy absolute immunity for acts of preparation for the initiation of judicial

proceedings for trial. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S. Ct. 2606 (1993); *Imbler*

*v. Pachtman*, 424 U.S. 409, 431, 96 S Ct. 984 (1976). "Those acts must include the professional

evaluation of the evidence assembled by the police and appropriate preparation for its presentation

at trial or before a grand jury after a decision to seek an indictment has been made." *Buckley*, 509

U.S. at 273. However, prosecutors are only entitled to qualified immunity when functioning as an

administrator or investigator and not an officer of the court serving as in an advocacy capacity. *Id.*

The Supreme Court notes a difference between the various roles of a prosecutor. *Id.* For example,

the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial is

different from the detective's role in searching for the clues and corroboration that might give him

probable cause to recommend that a suspect be arrested. *Id.* Prosecutors often can only claim

qualified immunity for the tasks they undertake outside their advocacy role, such as planning and

executing a raid on a weapons cache, providing guidance on investigative techniques to officers, or

helping officer determine whether probable cause is present. *Id.* at 274; *Burns v. Reed*, 500 U.S. 478, 482, 496, 111 S. Ct. 1934 (1991).

When an official asserts qualified immunity, the first step is to identify the allegedly infringed constitutional right. *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865 (1989).

> If the allegations do not establish a violation of a constitutional right, the [official] is entitled to qualified immunity. . . . If the allegations could make out a constitutional violation, we must ask whether the right was clearly established—that is, whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted. . . . If an [official] makes a reasonable mistake as to what the law requires, [he] is entitled to immunity.

*Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001) (citations and quotation marks omitted).

A constitutional right is "clearly established" when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Atteberry*, 430 F.3d at 256 (internal quotation marks omitted). The conduct need not be prohibited by a specific judicial mandate; rather, the unlawfulness need only be "readily apparent from relevant precedent in sufficiently similar situations." Id. at 257.

### E. Fourth Amendment Issue: Private Third Parties at Home of Search or Seizure

An issue considered in several claims in this motion to dismiss is whether it was a constitutional violation, and a well-settled one, for the defendant officers to bring a third party to plaintiff's home for private purposes as they searched the home and seized plaintiff. Dkt. 15-2 at 3–4. The court will address this issue at the outset.

The Supreme Court unanimously held in 1999 that it was "a violation of the Fourth Amendment for police to bring members of the media or other third parties into a home during the execution of a warrant when the presence of the third parties in the home was not in aid of the

execution of the warrant." *Wilson v. Layne*, 526 U.S. 604, 614, 119 S. Ct. 1692 (1999).  The court further explained that "if the police are lawfully present, the violation of the Fourth Amendment is the presence of the media and not the presence of the police in the house."  *Id.* at 614 n.2.

In *Wilson v. Layne*, state and federal law enforcement officers planned to execute three warrants for a man named Dominic Wilson.  *Id.* at 607.  Officers invited two members of the media, a Washington Post reporter and photographer, to accompany them in executing the warrants.  *Id.* The officers and media entered a home where they believed Wilson was located, but he was not there.  *Id.*  A confrontation occurred between officers and Wilson's father.  *Id.*  Officers were not able to execute the warrant for Wilson.  *Id.*  The photographer and reporter observed the event and the photographer took numerous pictures, though the pictures were never published.  *Id.*  The reporters were never involved in the execution of the arrest warrant.  *Id.*  Wilson's father and others in the home brought suit against officers under § 1983 and other statues contending that their Fourth Amendment rights were violated when the officers brought the media to observe and record the attempted execution of the arrest warrant.  *Id.* at 608.  The court agreed that a constitutional violation had occurred.  *Id.* at 614.

The court reasoned that the Fourth Amendment "embodies [a] centuries-old principle of respect for the privacy of the home."  *Id.* at 610.  And while the officers had a warrant, "it does not necessarily follow that they were entitled to bring [media] with them."  *Id.* at 611.  The court's reasoning quoted its holding in *Horton v. California*, which explained that if "'the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more.'" *Id.* at 611 (quoting *Horton v. California*, 496 U.S. 128, 140, 110 S. Ct. 2301 (1990)).  The court

concluded that "the presence of reporters inside the home was not related to the objectives of the authorized intrusion." *Wilson*, 526 U.S. at 611.  Despite respondents' arguments that media presence served a legitimate law enforcement purpose, the court determined that the media was there for its own private purposes and not as an aid to the execution of the warrant.  *Id.*  Therefore, the media's presence was outside the scope of the warrant.  *Id.* 611–14.  The court did point out, however, that "the presence of third parties during the execution of a warrant may in some circumstances be constitutionally permissible."  *Id.* at 613.

Despite the unanimous decision that a constitutional violation had occurred, the officers were not ultimately held liable because the court determined that "it was not unreasonable for a police officer in 1992 to have believed that bringing media observers along during the execution of an arrest warrant was lawful.  *Id.* at 616.  Therefore, the officers were entitled to qualified immunity.  *Id.* at 614–15.

Here, even if the officers' search of plaintiff's home was justified by a warrantless exception, *Wilson v. Layne* indicates that officers bringing third parties to a search of a home for a private purpose would likely be outside the scope of such an exception, and therefore a violation.  *Wilson*, 526 U.S. at 611.  However, that issue need not be decided today.  At this stage, the court need only consider how *Wilson v. Layne* applies to plaintiff's allegations that the warrantless search occurred without any warrantless justification.  Dkt. 15-2 at 3–4, 7.

Plaintiff alleges the footage[1] at her home was filmed for a reality television show, which would be a private purpose.  Dkt. 15-2 at 7, Ex. 4.  Further, she pleads there was no warrant or other

---

[1] This footage is referenced in plaintiff's complaint as exhibit 4 and a copy is on file with the court.  At this time, the court considers the footage as plaintiff does in her pleadings: as an exhibit that supports and clarifies the facts pled.  Though the video was obviously heavily edited and arranged, authenticity and other evidentiary issues can be addressed in the future if this video is offered as evidence.

justification for entering her home without a warrant.  *Id.* at 3–4.  Because the holding in *Wilson v. Layne* finds a constitutional violation when officers bring a third party to a home for private reasons – even with a warrant, it naturally applies to the presence of a third party for private reasons without a warrant.  *Wilson*, 526 U.S. at 614.  Plaintiff has further plead a well-settled constitutional violation because it involves the application of a unanimous Supreme Court decision decided 12 years prior to the search in the present case.  *Id.*

### III. ROOKER-FELDMAN DOCTRINE ANALYSIS

"[T]he *Rooker-Feldman* doctrine holds that inferior federal courts do not have the power to modify or reverse state court judgments, except when authorized by Congress."  *Union Planters Bank Nat. Ass'n v. Salih*, 369 F.3d 457, 462 (5th Cir. 2004) (internal quotation marks and citations omitted).  The doctrine is narrowly confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 293, 125 S. Ct. 1517 (2005).  The *Rooker-Feldman* doctrine does not bar federal jurisdiction if a plaintiff presents an independent claim, even if it denies a legal conclusion by a state court in a case to which the plaintiff was a party.  *Id.*  The *Rooker-Feldman* doctrine generally applies *only* where a plaintiff seeks relief that *directly* attacks the validity of an existing state court judgment."  *Weaver*, 660 F.3d at 90 (emphasis added).  A request for relief from an allegedly *erroneous decision by the state court* is barred by the doctrine, whereas a request for relief based on the *illegal acts by an adverse party* would not be barred.  *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382–83 (5th Cir. 2013).  And, courts must take care to not conflate the *Rooker-Feldman* doctrine and preclusion law.  *Lance*, 546 F.3d at 466; *Exxon Mobile Corp.*, 544 U.S. at

284, 293; *Weaver v. Tex. Capital Bank, N.A.*, 660 F.3d 900, 904 (5th Cir. 2011). The *Rooker-Feldman* doctrine is applied before an analysis by the federal court under state law to determine if any of the claims or issues are barred by preclusion. *Exxon Mobil Corp*, 544 U.S. at 293.

Plaintiff has brought her claims under the § 1983, a federal statue. However, defendants argue that this court lacks jurisdiction under the *Rooker-Feldman* doctrine because the reasonableness of the search of plaintiff's home has previously been considered by a state court in plaintiff's co-defendant's suppression hearing. Dkt. 19 at 11–13. Defendants further contend that the *Rooker-Feldman* doctrine bars the pending § 1983 case because it is inextricably intertwined with the underlying state court hearing decision, because the same home, search, and evidence are at issue.

The court is not persuaded that the *Rooker-Feldman* doctrine bars the case. The drug charges brought against plaintiff in state court were dismissed. There is no evidence before the court that there were any state court judgments against plaintiff in the underlying case. Plaintiff's pleadings show that she is not seeking to overturn a state court judgment against her, as there is none to overturn. Plaintiff is instead seeking redress for the defendants' allegedly illegal actions in the underlying case relating to the search, seizure and prosecution. This civil claim is independent from the criminal drug charges brought against her in state court. Further, defendants cite no authority to support application of this narrow doctrine to this case where all charges against the plaintiff in the underlying case were dismissed and there was no state court judgment in the case against the plaintiff. Defendants' additional claim that the prior criminal and pending civil cases are "inextricably intertwined" is unavailing, as the Fifth Circuit has explained that this language was only used to explain that a state court loser could not ask a federal district court to review the state

court decision by asserting constitutional claims that the state court had not directly [addressed]." *Truong*, 717 F.3d at 385 (internal quotations omitted).

For these reasons, defendants' Rule 12(b)(1) motion to dismiss on the basis of the *Rooker-Feldman* doctrine is denied.

### IV. COLLATERAL ESTOPPEL ANALYSIS

The doctrine of collateral estoppel "precludes relitigation of any ultimate issue of fact actually litigated and essential to the judgment in a prior suit." *Tarter v. Metro. Sav. & Loan Ass'n*, 744 S.W. 2d 926, 927 (Tex. 1988). Put another way, the "doctrine of collateral estoppel applies when relitigation could result in an inconsistent determination of the same ultimate *issue*; it does not bar litigation merely because the *outcomes* of two suits may appear to be inconsistent. *Tarter*, 744 S.W.2d at 928–29. This doctrine can apply whether or not the second suit is based upon the same cause of action as the first suit. *Matter of Schwager*, 121 F.3d 177, 181 (5th Cir. 1997).

State law on collateral estoppel applies because federal courts are generally required to "give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 96 (1980). However, the Texas Supreme Court has concluded that federal and Texas laws regarding collateral estoppel are the same. *John G. and Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W. 3d 268, 288 (Tex. 2002). To successfully bar a claim on the basis of collateral estoppel, the moving party "must establish that 1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; 2) those facts were essential to the judgment in the first action; and 3) the parties were cast as adversaries in the first action." *Id*. Defendants argue that plaintiff's entire lawsuit is barred by

collateral estoppel.  Dkt. 19 at 16.  However, defendants only make arguments as to the claims involving the allegedly unconstitutional search that occurred in her home.  Dkt. 19 at 16.

The first element of collateral estoppel requires full and fair litigation of the first case against plaintiff.  Defendants argue that "[a]s demonstrated by the transcript [from plaintiff's co-defendant's suppression hearing], the issue [of the reasonableness of the search] was fully and vigorously litigated and the plaintiff has not demonstrated that it was not."  Dkt. 19 at 16.  Defendants admit that charges against plaintiff were dismissed.  Dkt. 19 at 12.  Defendants point to no facts to demonstrate that plaintiff herself litigated the unreasonable search and seizure, much less the actual charge against her for possession of marijuana.  The complaint and accompanying exhibits show that plaintiff's co-defendant individually moved to suppress evidence in the prior case, the co-defendant individually had a hearing at which the plaintiff did not participate or attend, and the court decided to deny the co-defendant's motion to suppress based on the totality of the circumstances.  Dkts. 15-2 at 6–7, 15-5 at 134.  Defendants cite no authority for the proposition that if plaintiff's co-defendant is unsuccessful in his own suppression hearing in the underlying criminal case, it automatically means that the plaintiff has fully and fairly litigated the issues raised in that hearing.  The court is not persuaded that the first element of the claim has been met.  Along the same lines, the second element of collateral estoppel requires that the facts sought to be litigated in the second action were essential to the judgment in the first action.  There is no prior judgment against plaintiff to analyze in the underlying criminal charges or in a suppression hearing.  Therefore, this element has also not been met.

For these reasons, defendants' Rule 12(b)(6) motion to dismiss on the basis of collateral estoppel is denied.

## V. FAILURE TO STATE A CLAIM

Defendants argue that plaintiff's claims either do not state a claim upon which relief can be granted or that plaintiff has not plead sufficient facts to overcome the qualified immunities claimed by the individual defendants.  In this section, the court considers claims that do not state a claim upon which relief can be granted, either in whole or in part, before considering claims of immunity Section VI.

### A.   *County Liability*

A county's liability under § 1983 requires, at least, a municipal policy that was the "moving force" behind its employee's action to violate a person's constitutional rights, or the unconstitutional actions of a policymaker.  *Monell*, 436 U.S. at 694.  Municipal policy for purposes of § 1983 liability may consist of:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004).

Plaintiff claims that district attorney Ligon is a policymaker for Montgomery County in giving legal advice to Precinct 4 Constable's office deputies in regards to unreasonable searches and seizures and other legal matters by advising the constables to "force entry" into plaintiff's home when it was not legal to do so under the circumstances known to Ligon.  *Id.* at 7–8.  Plaintiff claims that Montgomery County is liable based on the second form of municipal liability.  Plaintiff also

pleads that Hayden and Welch are policymakers in regard to the training, policies, practices, and procedures of the Precinct 4 Constable's office and its employees.  Dkt. 15-2 at 8.  She asserts that Hayden is a policymaker in regard to the investigation of and break in to plaintiff's home, including inviting a third party to the home for private reasons.  *Id.*  She also asserts that Hayden brought third parties into other people's homes alongside officers, including when the officers illegally break into other people's homes without a warrant or exigent circumstances.  *Id.* at 8, 11, Ex. 4.  Finally, plaintiff alleges that all defendants were following the constitutionally deliberately indifferent policies, practices, customs and/or procedures of Montgomery County when they violated plaintiff's constitutional rights.  *Id.* at 11.

Defendants' sole argument against claims of county liability is that plaintiff has not pleaded sufficient facts to establish a policy, practice, custom or procedure on which to base county liability.  Dkt. 19 at 23.  Defendants specifically claim that plaintiff does not plead enough context regarding the department size and number of incidents to determine whether a policy exists.  *Id.*

Plaintiff only pleads that the district attorney Ligon gave improper legal advice to constables to illegally enter her home once, in her own case. This is not sufficient to establish a persistent, widespread practice. Dkt. 15-2 at 8.  Further, plaintiff only pleads sufficient facts that Hayden or Welch conducted an unreasonable search and seizure once, in her own case, aside from claims relating to a third party being present. *See* Sections VI.A, VI.B.  Plaintiff's allegations that Hayden and Welch conducted unreasonable searches and seizures in several other instances, are merely a conclusion without sufficient factual basis to support the claim.  *Id.* at 8, 10.

Plaintiff does plead sufficient facts to state a claim of a persistent practice of Montgomery County Constable's Office officers bringing third parties with them to execute search and arrest

warrants.  This court determined in Section IV.E that it was a violation of constitutional rights for officers to bring a third party to the home of plaintiff to film a search for private purposes.  Besides the pleadings and video footage of the search of plaintiff's home indicating that a third party was present, the same video footage features the officers at three other homes, indicating that a third party was present there, too.  Dkt 15-2 at 8, Ex. 4 (featuring plaintiff's incident at 11:25–12:25, two incidents involving execution of warrants at 2:30–3:25 and 15:45–16:45, and one incident involving the seizure of a man without a warrant at 7:00–8:30).  Plaintiff claims this practice occurred several more times, and was part of a reality television show.  Dkt. 15-2 at 7–8.

Defendant is correct that plaintiff does not provide the court an estimate of the number of times this conduct has occurred throughout the precinct, or facts regarding the size of the precinct or county or the amount of crime.  Dkt. 15-2 at 22–23.  This type of context can be critical when considering a claim in a motion for summary judgment setting.  *See Peterson v. City of Ft. Worth, Tex.*, 588 F.3d 838, 851–52 (5th Cir. 2009).  However, the four specific instances shown in Exhibit 4 that accompany plaintiff's pleadings are sufficient to state a claim for municipal liability at the pleading stage.  *See Harvey v. Montgomery Cnty., Tex.*, 881 F. Supp. 2d 785, 798 (S.D. Tex. 2012) (allowing a municipal liability claim to proceed based on well-plead facts, but explaining that the actual merits of plaintiff's claims, and context such as department size and the amount of crime in the county, would be relevant considerations at the motion for summary judgment stage).

Defendants' motion to dismiss claims for county liability for officers bringing a third party to plaintiff's home is denied.  Defendants' motion as to the other claims of municipal liability is granted.

### B.    Supervisory Liability

To hold a supervisor liable under § 1983, plaintiff must show that the conduct of the supervisor violated the constitutional rights of a party, not merely that a supervisor's subordinate violated the rights of a party.  *Estate of Davis*, 406 F.3d at 381. More specifically, an official not personally involved in the acts that deprived the plaintiff of his constitutional rights is liable under § 1983 if 1) the official failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights.  *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 459 (5th Cir. 2001); *Estate of Davis*, 406 F.3d at 381.  The third element of the test is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Estate of Davis*, 406 F.3d at 381.   Deliberate indifference is not satisfied with evidence of negligence or gross negligence, and requires more than erroneous decisions.  *Id.*  Further,

> [p]roof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference.  The plaintiff must generally demonstrate at least a pattern of similar violations.  Furthermore, the inadequacy of training must be obvious and obviously likely to result in a constitutional violation.

*Thompson*, 245 F.3d at 459 (internal citations omitted).

Plaintiff alleges that defendants Ligon, Hayden, Welch and Bergland are liable for failure to supervise for excessive force, unlawful detention and illegal search and seizure.  Dkt. 15-2 at 10. Plaintiff also alleges that Hayden is liable for his supervision of the investigation and breaking in to plaintiff's home with a third party present, which is an additional form of illegal search and seizure. Dkt. 15-2 at 10–11.

16

Plaintiff has not plead sufficient facts to show how Ligon was involved in supervising employees involved in the excessive force, unlawful detention and illegal search and seizure claims, much less that he is liable under a supervisory liability theory. Plaintiff has also not plead sufficient facts to show that Hayden, Welch, or Bergland's lack of supervision relating to excessive force, unlawful detention, or illegal search and seizure (aside from the claims relating to third parties being brought to the home) because plaintiff, at the very least, doesn't meet the "deliberate indifference" prong. Specifically, plaintiff points to no pattern of violations that could be the result of lack of supervision on these claims.

However, plaintiff has plead sufficient facts regarding whether Hayden's failure to supervise his officers caused the constitutional violation. Dkt. 15-2 at 11. According to plaintiff, officers brought a third party to her home to film the search for a reality television show featuring the Precinct 4 Constable's Office. Dkt. 15-2 at 7, Ex. 4. She claims county officers brought third parties to other homes where other searches and seizures occurred, and provided several examples in addition to her own home to support this claim in Ex. 4. Dkt. 15-2 at 8, Ex. 4 (*see* 2:30–3:25, 7:00–8:30, and 15:45–16:45) Plaintiff pleads that constable Hayden supervised the search at her home and other searches where officers were allowed to bring third parties to homes during searches and seizures was allowed to occur. Dkt. 15-2 at 8, Ex. 4.

This court determined in Section IV.E that it was a violation of constitutional rights for officers to bring a third party to the home of plaintiff during a search for private purposes. As to the first element, plaintiff pleads that Hayden was a supervisor of county law enforcement officers on Sept. 22, 2011 when officers brought a third party to plaintiff's home during the search. Dkt. 15-2

at 10–11.  Plaintiff claims that Hayden failed to supervise when the third party was allowed to remain at the home, in direct violation of plaintiff's rights.  *Id.*, Dkt. 15-2, Ex. 4.

As to the second element, the violation of plaintiff's rights was the presence of the third party that had no law enforcement purpose.  *Wilson*, 526 U.S. at 614 n.2.  Officers allegedly brought the third party to the home and gave the third party specific permission to be there.  *Id.* at 3-4.  Plaintiff pleads that Hayden was the supervisor of the search and seizure on Sept. 22, 2011.  Dkt. 15-2 at 11.  Plaintiff claims that Hayden's lack of supervision at the scene caused the violation, the presence of the third party.  *Id.* at 10.  Plaintiff has plead sufficient facts to show a causal connection between a lack of supervision and a violation of plaintiff's constitutional rights.

As to the third element, by not supervising the scene and allowing the third party to remain, Hayden disregarded the obvious risk of a constitutional violation, because it is well-settled that people have a constitutional right to be free of such conduct.  *See* Section IV.E.  Plaintiff's pleadings show the required pattern of similar violations through multiple instances, including her own case, where the constables brought third parties to homes where searches and seizures were to occur.  Dkt. 15-2 at Ex. 4 (*see* 2:30–3:25, 7:00–8:30, 11:25–12:25, and 15:45–16:45).  Plaintiff's pleadings are further supported by the fact that Hayden's conduct does not appear to be mere negligence or gross negligence, but intentional, as Hayden is featured throughout the scenes and interviews depicted in the footage of Exhibit 4.  Dkt. 15-2, Ex. 4.

Plaintiff pleads sufficient facts to defeat the motion to dismiss claims of Hayden's supervisory liability as it relates to the third parties being brought to a home by officers where a search and seizure is taking place, and the motion to dismiss is denied.  Hayden's ability to assert

18

qualified immunity as to this claim is considered below.  Defendants' motion to dismiss as to the other supervisory liability claims is granted.

### C.      *Malicious Prosecution of Plaintiff*

Plaintiff appears to plead a claim of malicious prosecution when she states that "[d]efendants violated plaintiff's Fourth Amendment and Fourteenth Amendment rights when they . . . continued the prosecution of her causing [plaintiff] to be forced to show up in Court many times before the case was dismissed in her favor." Dkt. 15-2 at 9.  The Fifth Circuit has abolished malicious prosecution claims under § 1983 as there is "no such freestanding constitutional right to be free from malicious prosecution." *Castellano v. Fragazo*, 352 F.3d 939, 945 (5th Cir. 2003).  While a state tort claim for malicious prosecution could still be brought alongside § 1983 claims, a liberal reading of plaintiff's pleading does not allow such an interpretation.  Therefore, plaintiff has failed state a claim upon which relief can be granted and defendants' motion to dismiss plaintiff's malicious prosecution claim is granted.

### D.      *Using Excessive Force at the Scene*

Plaintiff claims that the officers used excessive force against her when they seized her.  "It is well-settled that if a law enforcement officer uses excess force in the course of making an arrest, the Fourth Amendment guarantee against unreasonable seizure is implicated." *Harper v. Harris Cnty., Tex.*, 21 F.3d 597, 600 (5th Cir. 1994). "[A] claim for excessive force in violation of the Constitution requires 1) an injury 2) which  resulted directly and only from the use of force that was clearly excessive to the need and 3) the force used was objectively reasonable." *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).  Though a plaintiff is not required to show a significant injury,

she must claim she has suffered at least some form of injury.  *Id.* at 704.  What constitutes an injury

is subjective and defined by the context in which the force was used.  *Id.* at 704.

Plaintiff's only reference to an injury is that she was "put into handcuffs and made to sit in

a lawn chair outside the residence.  The handcuffs were very tight and caused extreme pain."  Dkt.

15-2 at 4.  The Fifth Circuit has found that "handcuffing too tightly, without more, does not amount

to excessive force."  *Glen v. City of Tyler*, 272 F.3d 307, 314 (5th Cir. 2001).  The pleadings are void

of any reference to additional injury.  Therefore, plaintiff has failed to establish a claim for excessive

force and defendants' motion to dismiss plaintiff's excessive force claim is granted.

### E.    *Failure to Produce the Exculpatory Evidence during Plaintiff's Prosecution*

Plaintiff claims her Fifth Amendment due process rights were violated when defendants

failed to produce the video, Exhibit 4, in violation of the *Brady* rule.  Dkt. 15-2 at 7, 10.  The *Brady*

rule "proscribes withholding evidence favorable to an accused and material to his guilt or to

punishment."  *Skinner v. Switzer*, 131 S. Ct. 1289, 1300 (2011) (describing the resulting rule of

*Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963)).  The Supreme Court recently explained that

the requirements to establish a *Brady* rule violation include: "(1) the evidence at issue is favorable

to the accused, either because it is exculpatory, or because it is impeaching; (2) the State suppressed

the evidence, either willfully or inadvertently; and (3) prejudice ensued."  *Skinner*, 131 S. Ct. at

1300.

Even if the *Brady* rule is applicable to a person who never went to trial because the charges

against the person were dismissed, legal authority for which the plaintiff does not provide and the

court could not find, plaintiff does not plead facts as to how the video is material to her guilt or

punishment.  Plaintiff admits that her case was dismissed, so there was no finding of guilt or

punishment for a finding of guilt.  Further, she does not explain how the video footage aids in the ultimate guilt determination, as she was never found guilty of possession of marijuana.  Dkt. 15-4. Even assuming that the video helps prove plaintiff's claims that lied, such as breaking into the home and seeing marijuana from outside the home, plaintiff does not relate this back to how the evidence makes her more or less likely to be found guilty of a possession of marijuana charge.  Therefore, plaintiff has failed to state a claim upon which relief can be granted, and defendants' motion to dismiss as to this claim is granted.

### F.    *Providing Materially False Statements in Co-defendant's Suppression Hearing*

Plaintiff claims her Fourth Amendment rights were violated when officers gave false statements in her co-defendant's suppression hearing.  However, plaintiff does not explain exactly why that is a violation of *her* rights.  Even if she could bring a claim for these assertions, the officers have absolute immunity from § 1983 claims relating to testimony at adversarial pretrial suppression hearings.  *Moore v. McDonald*, 30 F.3d 616, 619 (5th Cir. 1994).  The exhibits incorporated into plaintiff's pleadings show that her co-defendant's suppression hearing was adversarial.  Dkt. 15-5. Defendants' motion to dismiss as to this claim is granted.

### G.    *Conspiracy Amongst Defendants to Illegally Search Home*

To support a conspiracy claim under § 1983, plaintiff must allege facts that suggest: 1) an agreement among individuals to commit a deprivation, and 2) an actual deprivation must occur. *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994) (internal citations omitted).  A conspiracy serves to "impose liability on all of the defendants without regard to who committed the particular act," but a violation of 1983 is a required element.  *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995).  At the pleading stage, plaintiff's conspiracy claim

> need not have met a probability requirement . . . plausibility simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of an illegal agreement.  [Plaintiff's] facts, when placed in a context must raise a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.

*Jabary v. City of Allen*, 547 F. App'x 600, 610 (5th Cir. 2013) (internal quotation marks and punctuation omitted) (quoting in part *Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955 (2007)).

Plaintiff claims violation of her Fifth Amendment rights by all defendants, law enforcement officers and district attorney's office.  She specifically pleads that all defendants conspired to illegally break into plaintiff's home and give materially false statements in an affidavit for a search warrant and in her co-defendant's suppression hearing.  Dkt. 15-2 at 10.  She further pleads that defendants planned the illegal break in, search and detention and executed it.  *Id.*  Additionally, plaintiff pleads that defendants agreed to provide and did provide the material misrepresentations of which she complains.  Dkt. 15-2 at 8–9.  Plaintiff also pleads that a meeting occurred between Hayden and Ligon or Grant prior to the break in where Hayden was counseled to "force entry."  Dkt. 15-2 at 7–8.  Plaintiff's pleadings are supported by the exhibits she attaches to and references in her complaint.  The video footage shows a phone call exchanged between members of law enforcement and the district attorney's office where entry into the home is discussed.  Dkt. 15-2, Ex. 4 at 11:15–11:25.  Further, the video shows entry into the home in a way that is inconsistent with how officers describe entry in the search warrant affidavit and the co-defendant's suppression hearing.  Dkts. 15-2, Ex. 4 at 11:25–11:30, 15-3 at 2.

As explained in Section V.F, plaintiff has not stated a claim for a violation of her constitutional rights as to the statements given in her co-defendant's suppression hearing. There is no conspiracy claim related to this violation because the second element of a conspiracy claim

requires a violation of plaintiff's constitutional rights.  *Hale*, 45 F.3d at 920.  However, as explained

below in Sections VI.A, VI.B, and VI.D, plaintiff has stated facts sufficient to overcome qualified

immunity for a violation of her constitutional rights as to the entry into her home, the seizure of

plaintiff, and the false statements in the affidavit for a search warrant.  Because the plaintiff pleads

sufficient facts to allege a constitutional violation, the court need only focus on whether the first

element of conspiracy is met: whether an agreement between individuals to commit an illegal act

occurred.

Taking the facts alleged in the light most favorable to the plaintiff, as the court must do at

this stage, there are not sufficient facts to include the district attorneys Ligon and Grant in any

conspiracy claim under § 1983.  While plaintiff did plead that there was a phone call between the

district attorney's office and the law enforcement officers, this is the only involvement plaintiff

pleads. Dkt. 15-2 at 8.  The district attorneys were not on scene with the law enforcement officers.

Further, plaintiff does not plead sufficient facts to show that when Ligon or Grant advised the law

enforcement officers on how to proceed, that this was an agreement to commit an illegal act.  Dkt.

15-2 at 8.  More facts are required to suggest a preceding agreement to commit an illegal act.

The facts relating to the five law enforcement officers allegedly on scene are different, but

also do not suggest a preceding agreement to violate plaintiff's rights.  Plaintiff has plead facts that

the officers were working together to search plaintiff's home on September 22, 2011 at or around

10:15 p.m. Dkt. 15-2 at 3.  Further, she pleads that one of the officers at the scene called the district

attorney for guidance. Dkt. 15-2 at 7–8.  Plaintiff's Exhibit 4 shows two officers forcibly open the

front door to the home, go into the house, and secure the occupants by pointing something that

appears to be a weapon at them. Dkt. 15-2, Ex. 4 at 11:25–12:25.  Yet, the affidavit created by one

23

defendant to secure a search warrant conflicts with this footage by stating that the "[d]eputies were met at the front door by the listed suspects."  Dkt. 15-3 at 2.  Further, three of the officers from the search testified under oath at plaintiff's co-defendant's suppression hearing that they entered through an unlocked door.  Dkt. 15-5 at 131 ¶ 4.  While this conflicting evidence is troubling, and may indicate an agreement among the officers to change their stories at some point, this evidence does not support a finding that an agreement occurred among the officers to violate plaintiff's rights *before* the search and seizure on September 22, 2011.  Therefore, plaintiff has not pled facts that sufficiently connect an agreement and the constitutional violations she claims.

The motion to dismiss as to all conspiracy claims is granted.

### G.     *Asserting Defenses Against Plaintiff's Claims*

Plaintiff also pleads that defendants are violating her constitutional rights by alleging defenses in the § 1983 claims that she brought against the defendants.  Plaintiff cites no authority for this and the court does not find these assertions to be a cognizable claim.  Therefore, the motion to dismiss this claim is granted.

## VI. IMMUNITIES ANALYSIS

The court has determined that the following claims either properly state a claim upon which relief could be granted under a Rule 12(b)(6) standard, but must still undergo an analysis under qualified or some other immunity, or are disqualified under a claim of immunity on their face.  The officer defendants assert qualified immunity to the claims against them.  The district attorney defendants have asserted qualified immunity as to some claims and absolute immunity as to others.

### A.       *Breaking into Plaintiff's Home Without a Warrant or Exigent Circumstances*

This claim is brought against the law enforcement officers present at her home, who she claims detained her at her home without probable cause and in violation of her Fourth Amendment rights. Dkt. 15-2 at 2–3.  It is well-settled that the Fourth Amendment provides a constitutional right to be free from unreasonable searches and seizures of the home.  It provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated." U.S. CONST. amend. IV.  "At the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.  With few exceptions, the question whether a warrantless search of a home is reasonable and hence constitutional must be answered no."  *Kyllo v. U.S.*, 533 U.S. 27, 31, 121 S. Ct. 2038 (2001).

Plaintiff pleads that law enforcement officers broke into her home without a search or arrest warrant, or any other justification, on September 22, 2011 at 10:15 p.m.  Dkt. 15-2 at 3, Ex. 4 at 11:25–11:45.  Defendants do not point to a search or arrest warrant for their initial entry and claim that it was justified by exigent circumstances or the plain view doctrine, which plaintiff disputes. There is a dispute as to whether officers can establish an affirmative defense, and an affirmative defense that is not clear on the face of a pleading does not dispose of a motion to dismiss.  Dkt. 19 at 18 ¶ 3; *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986).  Plaintiff has met the pleading burden to establish a violation of her well-settled constitutional right to be free from unreasonable searches.  Defendants' motion to dismiss this claims on the basis of qualified immunity is denied.

**B.**      ***Seizing Plaintiff at her Home Without Probable Cause***

This claim is brought against the law enforcement officers present at her home, who plaintiff claims detained her at her home without probable cause and in violation of her Fourth Amendment rights. Dkt. 15-2 at 2, 9.  As explained in Section VI.A, there is a constitutional right to be free from unreasonable seizures, which is particularly strong in the home.  U.S. CONST. amend. IV; *Kyllo*, 533 U.S. at 31.  Plaintiff pleads that she was seized and detained outside her home before defendants had a search or arrest warrant, or justification for the search or seizure.  Dkt. 15-2 at 3, Ex. 4 at 11:25–11:45.  Plaintiff has met the pleading burden to establish a violation of her well-settled constitutional right to be free from unreasonable seizures.  Defendants' motion to dismiss this claims on the basis of qualified immunity is denied.

**C.**      ***Bringing a Third Party to the Search of Plaintiff's Home for Private Purposes***

This claim is brought against the law enforcement officers present at her home, who plaintiff claims brought third parties to her home for private purposes in violation of her Fourth Amendment rights. Dkt. 15-2 at 4. The court determined in Section IV.E that it was a violation of constitutional rights for officers to bring a third party to the home of plaintiff to film a search for private purposes. Plaintiff sufficiently pleads that a third party was brought to her home to film for private purposes, and provided the court some of the video footage from the search that supports this claim.   Dkts. 15-2 at 3–4, 7–8, Ex. 4.  Plaintiff has met the pleading burden to establish a violation of her well-settled constitutional right to be free from officers bringing third parties into her home during a search for private purposes.  Defendants' motion to dismiss this claims on the basis of qualified immunity is denied.

In the alternative to Hayden being individually liable for bringing third parties to plaintiff's home for a private purposes during a search, she has claimed that he can be held liable for his failure to supervise his officers violated plaintiff's rights.  The court concluded in Section V.B that plaintiff pled sufficient facts to state a claim upon which relief could be granted as to Hayden's supervisory liability for violating the constitutional right not to have officers bring third parties into a home for private purposes.  Because the claim of supervisory liability is premised on Hayden's deliberate indifference to plaintiff's constitutional rights, which are well-settled rights, plaintiff has also stated a claim sufficient to defeat defendants' motion to dismiss on qualified immunity grounds.  Defendants' motion to dismiss this specific supervisory liability claim against Hayden on the basis of qualified immunity is denied.

### D.    *Justifying the Initial Search and Later-obtained Warrant on False Information*

This claim is brought against the law enforcement officer defendants in this case who conducted the search and obtained the warrant after the search.  Dkt. 15-2 at 4.  It is a clear violation of constitutional rights when a law enforcement officer lies in an affidavit to obtain a warrant. *Husband v. Bryan*, 946 F.2d 27, 30 (5th Cir. 1991).  Further, a reasonable officer would know that "a government official violates the Fourth Amendment when he deliberately provides false, material information in an affidavit in support of a warrant."  *DeLeon v. City of Dallas*, 345 F. App'x 21, 23 (5th Cir. 2009) (citing *Hart v. O'Brien*, 127 F.3d 424, 448–449 (5th Cir. 1997), *abrogated on other grounds by Kalina v. Fletcher*, 522 U.S. 118, 118 S. Ct. 502 (1997)).

Plaintiff pleads that the facts alleged by defendants to justify the warrantless search, and which were also included in the affidavit to the search warrant, were false and fabricated.  Dkt. 15-2 at 4–5.  Plaintiff points to specific facts that she alleges were fabricated: that the officers could see

27

and smell marijuana in the home before they went inside, that deputies smelled marijuana, and that deputies were met at the door by plaintiff and her former co-defendant. *Id*, Ex. 4. Plaintiff has met the pleading burden to establish a violation of her well-settled constitutional right to be free from unreasonable searches. Defendants' motion to dismiss this claim on the basis of qualified immunity is denied.

### E.   *Continuing to Prosecute Plaintiff Based on False Information from Officers*

This claim appears to be brought against district attorneys office employees Hayden and Grant as they are the only defendants are capable of prosecuting her. Plaintiff claims her Fourth Amendment rights were violated because defendants prosecuted her using false information from the police officers. However, a prosecutor's initiation of a prosecution, and the act of prosecuting an individual are all entitled to absolute immunity. *Buckley*, 509 U.S. at 273. Therefore, defendants Ligon and Grant are entitled to absolute immunity on this claim. *Imbler*, 424 U.S. at 431. Defendants' motion to dismiss as to this claim is granted.

## VII. CONCLUSION

For the preceding reasons, defendants' motion to dismiss (Dkt. 19) is **GRANTED IN PART** and **DENIED IN PART.**

It is so ORDERED.

Signed at Houston, Texas on October 6, 2014.

_____
Gray H. Miller
United States District Judge

28