UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PERLA CARR, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION H-13-2795 |
| § | |
| MONTGOMERY COUNTY, TEXAS, *et al.*, § | |
| § | |
| *Defendants*. § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court is defendants' motion for partial summary judgment (Dkt. 50). Having considered the motion, response, reply, and all applicable law, defendants' motion for partial summary judgment (Dkt. 50) is DENIED.

**I. BACKGROUND**

Plaintiff Perla Carr's home was the subject of a narcotics search by Montgomery County Precinct 4 Constable's Office on September 22, 2011. Dkt. 50 at 11-12. According to plaintiff, officers forced their way into the home without a warrant or justification for a warrantless search of her home. Dkt. 63 at 4-5. A laser sight was pointed at plaintiff as she was seized from her home, and she was then placed in handcuffs and detained outside the residence while her home was searched. *Id.* at 5. She alleges that the officers at her home fabricated facts to try to justify breaking into the home, and they obtained a search warrant only after they searched the entire home and found evidence. *Id.* at 5. During the search, officers brought a third party with a video camera into plaintiff's home who filmed the search and seizure. *Id.*. Later, footage from the search was allegedly available online. Dkt. 63-1. After the search, plaintiff was charged with felony marijuana possession, but the charges were later dismissed. Dkt. 63 at 5.

On September 11, 2013, plaintiff brought this suit pursuant to 42 U.S.C.A. § 1983 ("§ 1983") and has since amended her claims. Dkt. 15-2. Several of plaintiff's claims have already been dismissed. Dkt. 25. Defendants now move for summary judgment on several of the remaining claims. Dkt. 50. Defendants argue that 1) plaintiff is only entitlted to nominal damages on her claim based on the presence of a third-party videographer, 2) plaintiff's claim based on the presence of a third-party videographer should be dismissed as to Montgomery County, and 3) plaintiff's claims based on an illegal search and seizure and fabrication of evidence should be dismissed as to all parties.

## II. LEGAL STANDARDS

### A.   *Summary Judgment*

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008).

**B.     42 U.S.C. § 1983**

State actors are subject to civil liability when, "under color of any statute, ordinance, regulation, custom, or usage, of any State," that official subjects, or causes to be subjected, a person "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.  For a plaintiff to make a claim under § 1983 she "must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting under color of state law." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005).  Public officials sued in their personal capacity for money damages under § 1983 may be able to assert a common-law defense of absolute or qualified immunity from suit. *Imbler v. Pachtman*, 424 U.S. 409, 418–19, 96 S. Ct. 984 (1976).  Further, to hold the county or an employee's supervisor liable, plaintiff must plead facts to establish the actual liability of the county or the supervisor, as neither can be held vicariously liable for an employee's actions under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018 (1978); *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).

**D.     Immunity**

When an official asserts qualified immunity, the first step is to identify the allegedly infringed constitutional right. *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865 (1989).

> If the allegations do not establish a violation of a constitutional right, the [official] is entitled to qualified immunity. . . . If the allegations could make out a constitutional violation, we must ask whether the right was clearly established—that is, whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted. . . . If an [official] makes a reasonable mistake as to what the law requires, [he] is entitled to immunity.

*Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001) (citations and quotation marks omitted).

3

A constitutional right is "clearly established" when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Atteberry*, 430 F.3d at 256 (internal quotation marks omitted). The conduct need not be prohibited by a specific judicial mandate; rather, the unlawfulness need only be "readily apparent from relevant precedent in sufficiently similar situations." Id. at 257. In conducting the qualified immunity analysis, the court "may not resolve genuine disputes of fact in favor of the party seeking summary judgment" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

### III. ANALYSIS

#### A.   *Damages for Third-Party Videographer Claim*

The court has already determined that allowing a third-party videographer into plaintiff's home during the search was a Fourth Amendment violation Dkt. 25 at 9. Defendants do not currently dispute this. Dkt. 50 at 23. Rather, they argue that plaintiff has failed to present any evidence of damages as a result of the violation and is only entitled to nominal damages. *Id.* at 27. Plaintiff's second amended complaint alleges that she suffered mental anguish including "fear, sadness, embarrassment, depression and lost sleep" as a result of defendant's violation. Dkt. 15 at 11. Plaintiff elaborates on the alleged mental anguish in her deposition stating that: the incident caused her to suffer from depression which required medication; the Texas Takedown video caused her to relive the events in question; the video ruined her reputation, caused low self-esteem, and prevented sleep; she has become a virtual shut-in; she is frightened that police will break into her home; she constantly unlocks and relocks her doors and windows; she is anxious in social situations; the video was extremely embarrassing because it showed her with laser sights on her; and her family members saw the video. Dkt. 63-2.

4

Defendants' motion presents evidence that plaintiff's depression preceded the September 22, 2011 arrest, that the physical ailments she complains of are due to arthritis as opposed to emotional distress, that plaintiff had lost her job prior to the incident and has refused job offers due to health problems. Dkt. 50 at 24-27. Defendant claims that any distress suffered by plaintiff stemmed form her arrest and subsequent news coverage—not the presence of a third-party videographer. *Id.*

"An award of damages for mental anguish under section 1983 requires a 'specific discernable injury to the claimant's emotional state' supported by evidence of the nature and extent of such harm." *Jefferson Cnty. v. Nguyen*, No. 09-13-00505-CV, 2015 WL 4597560 at *22 (5th Cir. July 31, 2015) (quoting *Brady v. Fort Bend Cnty.*, 145 F.3d 691, 718 (5th Cir. 1998)).

> [A] plaintiff's testimony, standing alone, can support an award of compensatory damages for emotional distress based on a constitutional violation; however, the testimony must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated; neither conclusory statements that the plaintiff suffered emotional distress nor the mere fact that a constitutional violation occurred supports an award of compensatory damages.

*Vadie v. Miss. State Univ.*, 218 F.3d 365, 376 (5th Cir. 2000) (citing *Price v. City of Charlotte*, 93 F.3d 1241, 1254 (4th Cir. 1996)). Plaintiff's testimony is evidence of a "specific discernable injury" to her emotional state. To be sure, defendants have presented evidence to rebut her testimony, but it is the job of the fact-finder, not the court, to determine whose evidence is more persuasive. *See Brady*, 145 F.3d at 714. Defendants' motion for summary judgment on this ground is denied.

### B.   *County Liability*

Montgomery County moves for summary judgment on the third-party videographer claim. A county's liability under § 1983 requires: "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation

5

whose 'moving force' is that policy (or custom)" *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (citing *Monell v. New York Dept. of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018 (1978); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). Montgomery County currently disputes only the first of these requirements. Dkt. 50 at 28-29. Municipal policy for purposes of § 1983 liability may consist of:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004).

Plaintiff pins county liability for the third-party videographer claim on a persistent, widespread practice of allowing third-party videographers into citizens' homes and failing to train county employees on the unconstitutionality of allowing videographers into citizens' homes. Dkt. 63 at 28. Montgomery County responds that this is the only known instance of a non-law enforcement videographer entering a private residence and is not enough to show a persistent, widespread practice. Dkt. 50 at 28. The court largely agrees with plaintiff on this point. Even if this is the only known instance of a videographer entering a citizen's home, it is definitely not the only instance of a third-party videographer accompanying Montgomery County law enforcement officials during the execution of their official duties. Plaintiff has submitted several episodes of the professionally-produced internet reality show, *Texas Takedown*. Dkts. 7-4; 63-15. *Texas Takedown* features several members of the Montgomery County Constable's office executing warrants, making

arrests, and participating in training exercises. *Id.* The introduction of each episode features Montgomery County Constable Kenneth Hayden, and several other members of the constable's office are interviewed throughout the episodes. *Id.* The footage shows the videographer accompanying the officers wherever they go, including right up to the door of several residences. *Id.* Evidence of repeated participation in and endorsement of a professionally-produced reality show is sufficient to establish an official policy or custom of allowing third-party videographers to accompany law enforcement officers while executing official duties. The court is unwilling to find that there was a policy or custom of allowing the videographers inside of people's homes. However, plaintiff may be able to prove at trial that the policy of allowing the videographer to follow along was the moving force behind the constitutional violation. Montgomery County's motion for summary judgment on this ground is denied.

### C. *Unreasonable Search and Seizure*

The individual defendants argue that they are entitled to qualified immunity on plaintiff's unreasonable search and seizure claim and defend the search as reasonable under the circumstances. It is well-settled that the Fourth Amendment provides a constitutional right to be free from unreasonable searches and seizures of the home. It provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated." U.S. CONST. amend. IV. "At the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion. With few exceptions, the question whether a warrantless search of a home is reasonable and hence constitutional must be answered no." *Kyllo v. U.S.*, 533 U.S. 27, 31, 121 S. Ct. 2038 (2001).

Defendants acknowledge that the initial search of plaintiff's home was without a warrant. They argue that their investigation was initially justified by a tip from a confidential informant who told them that plaintiff's son was growing marijuana in her home. Dkt. 50 at 11. Based on this information, the officers planned to conduct a "knock and talk" at plaintiff's home. *Id.* at 12. In preparation for the "knock and talk," officers spread out around the home. *Id.* One of the officers (Looza) testified that while he was positioned around the home, he could smell marijuana and could see marijuana in the home by looking through a crack in the molding surrounding the window. Dkt. 50 at 13-14. It was the alleged sight and smell of marijuana that gave the officers probable cause to search the home. Dkt. 50 at 13. Plaintiff's son has testified that it would not have been possible to see marijuana through that window because of where it was positioned and that the officer was lying about seeing it and smelling it. Dkt. 63 at 20. Plaintiff further states that even if the officers did see marijuana through the crack, peering through a crack in the molding surrounding the window would have required the officers to be within the curtilage of the home *Id.* at 17. If the officers were within the curtilage without a warrant, probable cause, or exigent circumstances (which were not present when the operation began), that would have been an unconstitutional search. *United States v. Dunn*, 480 U.S. 294, 300 (1987). However, the officers claim that they were in a public area between mobile homes when they saw the marijuana. Dkt. 50 at 13. Since plaintiff's version of the facts indicates an unconstitutional search while defendant's version indicates the existence of probable cause, the court must deny summary judgment.

Even if the officers did have probable cause to search the home after viewing the marijuana through the window, there are additional factual disputes that also preclude summary judgment. After observing the marijuana inside, the officers knocked on the door of the home. The *Texas*

8

*Takedown* video shows that when there was no answer, they pried open the front door and entered the home.

"A warrantless search of a person's home is presumptively unreasonable, and it is the government's burden to bring the search within an exception to the warrant requirement." *U.S. v. Aguirre*, 664 F.3d 606, 610 (5th Cir. 2011). The officers claim that exigent circumstances justified the warrantless search. Dkt. 50 at 15. In determining the existence of exigent circumstances, the Fifth Circuit employs a five-factor test: "(1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the reasonable belief that contraband is about to be removed; (3) the possibility of danger to the police officers guarding the site of contraband while a search warrant is sought; (4) the information indicating that the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructability of the contraband and the knowledge that efforts to dispose of it and to escape are characteristics in which those trafficking in contraband generally engage." *Aguirre*, 664 F.3d at 611.

In support of their claim of exigency, defendants argue that after knocking, they heard movement inside the home, saw that a video camera was aimed at the front door area, and were concerned about the destruction of evidence within the home. Dkt. 50 at 15. This testimony is contradicted by plaintiff's son, who stated that there was no substantial movement within the house, and by the testimony of Officer Looza, who stated that he could not hear movement in the home. Dkt. 63 at 24. Moreover, defendants indicate that they could easily see into the home and could see the marijuana plants from the window, yet no one has claimed that they saw plaintiff or her son trying to move or destroy evidence. The officers claim they did not have time to obtain a warrant because the exigent circumstances materialized at the same time as probable cause. Dkt. 50 at 19.

9

However, prior to the officers knocking on the door, there was no indication that the occupants of the home knew the police were "on their trail." In fact, there is testimony that both occupants were asleep at the time the officers peered in the house and discovered the marijuana. Dkt. 50 at 17. No reason is indicated why the officers could not maintain their observation of the home while obtaining a warrant. Given these factual disputes, the officers have not proved exigency, and summary judgment is inappropriate.

## IV. CONCLUSION

Too many factual disputes remain in this case to grant defendants' motion for partial summary judgment. Plaintiff will of course be required to prove each element of her case, but she will have a chance to do so. Defendants' motion for partial summary judgment is DENIED.

It is so ORDERED.

Signed at Houston, Texas on September 10, 2015.

_____
Gray H. Miller
United States District Judge