# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| PERLA CARR, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-13-2795 |
| | § | |
| MONTGOMERY COUNTY, TEXAS, *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

## ORDER

Pending before the court are (1) Defendants' motion to exclude the testimony of plaintiff's medical experts (Dkt. 51) and (2) Defendants' motion to exclude or limit the testimony of plaintiff's purported expert Roger Clark (Dkt. 66). Having considered the motions, responses, and applicable law, the court is of the opinion that Defendants' motion to exclude the testimony of plaintiff's medical experts (Dkt. 51) should be GRANTED and Defendants' motion to exclude or limit the testimony of plaintiff's purported expert Roger Clark (Dkt. 66) should be GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

On September 22, 2011, law enforcement officers of Montgomery County Precinct 4 searched plaintiff Perla Carr's home for narcotics. Dkt. 15, Ex. 2 ¶¶ 12-13. Carr alleges that the officers broke open her locked front door and searched her home without a warrant and without probable cause. *Id.* According to Carr, she awoke to the noise of the officers breaking open the door. *Id.* ¶ 12. In response to calls from the officers, she stepped out of her bedroom, where a laser sight was pointed at her chest. *Id.* She was then handcuffed and taken outside. *Id.* ¶ 16. A cameraman accompanied the officers during the search and filmed the incident. *Id.* ¶ 13. On the

following day, Carr alleges that the officers obtained a search warrant based on false and misleading statements. *Id.* ¶ 20.  The Montgomery County District Attorney's office initially charged Carr with felony possession of marijuana, but it then voluntarily dismissed the charges due to insufficient evidence. *Id.* ¶ 22.  Carr later discovered that footage from the search of her home had been posted online as part of a reality television series known as "Texas Takedown."  *Id.* ¶ 25.

On September 22, 2013, Carr filed suit against Montgomery County, Texas and several individual officers (collectively, "Defendants") under 42 U.S.C. § 1983. Dkt. 1.  On May 21, 2015, Carr filed her expert designation (Dkt. 46) and a supplemental expert designation (Dkt. 47).  On June 12, 2015, Defendants filed a motion to exclude the testimony of plaintiff's medical experts.  Dkt. 51. On July 4, 2015, Carr filed supplemental expert designations for two of the nine challenged medical experts.  Dkt. 55, Ex. 1.  On August 7, 2015, Defendants filed a motion to exclude or limit the testimony of plaintiff's purported expert Roger Clark.  Dkt. 66.  Docket call is set for October 30, 2015.  Dkt. 31.

## II. LEGAL STANDARD AND ANALYSIS

### A. Defendants' Motion to Exclude the Testimony of Plaintiff's Medical Experts

Defendants have moved to exclude nine of the medical experts that Carr included in her expert designation: Dr. Brown, Dr. Venkatesh, Dr. Berrios, Dr. Reis, Dr. Heller, Dr. Chary, Mark Lehman, and two groups labeled "professionals who treated Plaintiff at Kingwood Psychiatry" and "professionals who treated Plaintiff at Marathon Psychology Group."  Dkt. 51.  Carr asks the court to deny Defendants' motion only as to two of the experts: Dr Reis and Dr. Heller.  Dkt. 55 & Ex. 2. Along with her response, Carr filed a second supplemental expert designation, revising her previous expert designation as to Dr. Reis and Dr. Heller.  Dkt. 55, Ex. 1.  Because Carr does not oppose Defendants' motion as to the other seven designated experts, Defendants' motion to exclude

2

Dr. Brown, Dr. Venkatesh, Dr. Berrios, Dr. Charry, Mark Lehman, "professionals who treated Plaintiff at Kingwood Psychiatry" and "professionals who treated Plaintiff at Marathon Psychology Group" is GRANTED.

Defendants ask that the court also exclude the testimony of Dr. Reis and Dr. Heller.  Dkt. 56. Defendants maintain that, despite the supplemental information Carr provided for Dr. Reis and Dr. Heller, the expert designation remains deficient under Federal Rule of Civil Procedure 26(a)(2)(C).  *Id.* ¶ 4.

Rule 26(a)(2) separates experts into two types: those who must provide an expert report under Rule 26(a)(2)(B) and those who are exempt from the expert report requirement under Rule 26(a)(2)(C).  Fed. R. Civ. P. 26(a)(2).  Treating physicians, such as the physicians at issue here, are generally not required to provide an expert report when they testify about their treatment of a patient. Fed. R. Civ. P. 26(a)(2)(C), Advisory Comm. Note (2010) ("A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or 705.  Frequent examples include physicians or other health care professionals . . . ."); *see also Jones v. USF Holland, Inc.*, No. 3:07-CV-00130, 2009 WL 928732, at *1 (E.D. Ark. Apr. 3, 2009) (noting that most courts do not require a treating physician to file an expert report when testifying as to the treatment of a patient, but may require an expert report when the testimony goes beyond the scope of treatment).  Neither Dr. Reis nor Dr. Heller has filed the expert report required of a Rule 26(a)(2)(B) witness.  Therefore, Dr. Reis and Dr. Heller may testify only if Carr satisfies the requirements of Rule 26(a)(2)(C).

Rule 26(a)(2)(C) requires a party to provide in its disclosure of expert testimony a statement of "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is

3

expected to testify." Fed. R. Civ. P. 26(a)(2)(C).  These summary disclosures are "considerably less extensive than the report required by Rule 26(a)(2)(B).  Courts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have."  Fed. R. Civ. P. 26(a)(2)(C), Advisory Comm. Note (2010).  However, "some specificity is required."  *Tolan v. Cotton*, No. H-09-1324, 2015 WL 5332171, at *5 (S.D. Tex. Sept. 14, 2015) (Harmon, J.).  Courts have interpreted the "summary of the facts and opinions" requirement as follows:

> The Court finds that a summary of opinions under Rule 26(a)(2)(C) means a brief account of the main opinions of the expert, and that the opinions must state a view or judgment regarding a matter that affects the outcome of the case.  A mere statement of the topics or their opinions is insufficient.  Further, this Court finds that a summary of facts supporting those opinions under Rule 26(a)(2)(C) means a brief account of facts—only those on which the expert actually relied in forming his or her opinions—that states the main points derived from a larger body of information; merely stating the topic matters of facts relied upon does not suffice.  Similarly, it does not suffice to reference large bodies of material sources of facts, without stating a brief account of the main points from those large bodies on which the expert relies.

*Id.* at *6 (quoting *Little Hocking Water Ass'n, Inc. v. E.I. DuPont de Nemours & Co.*, No. 2:09-CV-1081, 2015 WL 1105840, at *9 (S.D. Ohio Mar. 11, 2015)).

The court set a deadline for Carr to designate expert witnesses of May 21, 2015.  Dkt. 44.  In Carr's timely filed expert designation, she merely states that Dr. Reis is "Plaintiff's mental healthcare provider and custodian of records" and that Dr. Heller is "Plaintiff's family physician and mental healthcare provider and custodian of records."  Dkt. 46.  These disclosures are deficient under Rule 26(a)(2)(C) because they provide no summary of facts or opinions regarding the experts' anticipated testimony.  On July 4, 2015, Carr filed an untimely supplement to her expert designation

in response to Defendants' motion to exclude plaintiff's medical experts.  Dkt. 55, Ex 1.  In the

supplement, Carr expanded on the previous summaries submitted for Dr. Reis and Dr. Heller.  *Id.*

　　　　Carr submitted the following revised summary of Dr. Reis's testimony:

> Plaintiff started seeing Dr. Ololade Reis starting April 20, 2015.
> Dr. Reis may testify and have opinions that the defendants' breaking
> into Perla's home, laser sighting at her chest, illegal searching, Texas
> Takedown filming and Youtube video, unlawful arrest and other acts
> by defendants have caused mental anguish including causing and/or
> contributing to Ms. Carr's major depression.  Dr. Reis bases her
> opinions on the preceding facts and facts from her examination and
> treatment of Ms. Carr and may also opine about future treatment.

Dkt. 55, Ex. 1 at 1.  Carr's revised summary of Dr. Reis's testimony does not satisfy her obligation

under Rule 26(a)(2)(C).  The summary offers no indication of the particular facts relied on by

Dr. Reis in forming her opinion that Defendants have caused or contributed to Carr's depression.

Rather, the summary includes little more than a description of the entire event that gave rise to this

litigation and a general reference to "facts from her examination and treatment of Ms. Carr."

Dkt. 55, Ex. 1.  This summary essentially references all possible facts, rather than identifying the

particular facts that support Dr. Reis's testimony.   Further, the statement that Dr. Reis "may also

opine about future treatment" gives no indication of Dr. Reis's view with respect to future treatment.

It is insufficient to merely state that Dr. Reis may have *an* opinion about future treatment—Carr must

identify Dr. Reis's conclusion and articulate facts supporting that conclusion.

　　　　Carr also submitted the following revised summary of Dr. Heller's testimony:

> Plaintiff's family physician and mental healthcare provider and
> custodian of records.  Dr. Heller treated Perla Carr after the
> defendants broke into her home.  Dr. Heller will testify and have
> opinions based upon his examination and treatment of Perla Carr and
> as to her depression and opinion about future treatment.

*Id.* at 1-2.  Carr's summary of Dr. Heller's testimony is also deficient under Rule 26(a)(2)(C).  This summary simply states that Dr. Heller will "have opinions" about the subject of Carr's depression and future treatment.  It does not provide any indication of Dr. Heller's conclusions.  Further, this summary identifies no particular facts which Dr. Heller relied on—it states generally that his opinions are based on "his examination and treatment."  Moreover, the court cannot excuse Carr's inadequate summaries merely because she filed medical records in this case.  *See Williams v. State*, No. 14-00154, 2015 WL 5438596, at *3 (M.D. La. Sept. 14, 2015) (noting that several courts have rejected the idea that referencing medical records is sufficient to meet a party's Rule 26(a)(2)(C) obligation).  This is especially true where, as here, the medical records filed with the court give very little indication of the experts' expected testimonies.  Therefore, the court holds that Carr has not satisfied her Rule 26(a)(2)(C) obligation to provide "summaries of facts and opinions" for Dr. Reis and Dr. Heller's expected testimonies.

Where a party fails to provide information required by Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  For those failures that are not substantially justified or harmless, this sanction is "self-executing" and "automatic."  Fed. R. Civ. P. 37(c)(1), Advisory Comm. Note (1993).  To determine whether a failure to comply with Rule 26(a) is substantially justified or harmless, the court considers four factors: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose."  *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563-64 (5th Cir. 2004) (citation and internal quotation marks omitted).  Carr has offered no indication regarding the importance of these experts' testimony nor has she offered an explanation for her failure to comply

with Rule 26(a). Factors (1) and (4) therefore weigh in favor of excluding the experts' testimony. *See Cont'l Cas. Co. v. F-Star Prop. Mgmt., Inc.*, No. 10-CV-102, 2011 WL 2887457, at *7 (W.D. Tex. July 15, 2011) (finding that defendant's failure to indicate the importance of non-retained experts' testimony or explain its non-disclosure of the required information weighs in favor of exclusion). Even assuming that the expert testimony is important to Carr's case, the importance of the testimony cannot alone justify Carr's failure to timely comply with her disclosure obligations. *See Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990) ("The importance of such proposed testimony cannot singularly override the enforcement of local rules and scheduling orders."). Further, the importance of an expert's testimony highlights the need for that expert to be properly designated so that opposing counsel may adequately prepare for that testimony. *Id.* ("The claimed importance of expert testimony underscores the need for [plaintiff] to have timely designated his expert witness so that Attorney could prepare for trial.").

Carr argues that Defendants have not been prejudiced and that Defendants "laid behind the log" by not requesting a corrected expert designation. Dkt. 55. However, Defendants have no obligation to remind Carr to comply with the Federal Rules, and Carr's failure to provide a proper expert designation *has* prejudiced Defendants. A proper expert designation allows opposing counsel to anticipate the expert's testimony and make decisions about how to approach that expert. *See Cont'l Cas. Co.*, 2011 WL 2887457, at *7 (noting that a party's failure to provide a proper summary of facts and opinions is prejudicial because opposing counsel cannot determine whether to depose that witness or decide what rebuttal evidence to offer). Further, Carr's failure to provide a proper expert designation has caused significant delays in Defendants' ability to prepare. Here, Carr offered a timely but deficient expert designation on the deadline set by the court, May 21, 2015. Dkt. 46. Carr then offered a supplemental, but still deficient, expert designation on July 4, 2015, in response

to Defendants' motion to exclude.  Dkt. 55, Ex. 1.  In order to cure the deficient expert designation, the court would need to give Carr a second opportunity to supplement her designation, causing further delay and prejudice to Defendants.  *See Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 571 (5th Cir. 1996) (noting that Rule 26(a) requires complete *initial* disclosures and that supplemental disclosures are "not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information").  Similar delays have been considered sufficient grounds to strike an expert.  *See id.* at 573 (finding that plaintiff was prejudiced where defendant waited a month after initial expert disclosures to provide more detailed information about the witnesses, and affirming the district court's decision to strike the expert). Further, there is no reason to believe that a continuance would cure the prejudice, given that Carr has already submitted two rounds of deficient disclosures as to these experts.  *See Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 381 (5th Cir. 1996) (finding that the district court need not order a continuance where there is no indication a continuance would have cured the deficiencies, and it appeared the continuance would cause additional delay and expense).

Accordingly, the court finds that Carr's failure to file proper summaries of facts and opinions for Dr. Heller and Dr. Reis is not harmless or substantially justified.  As a result, Defendants' motion to exclude plaintiff's medical experts is GRANTED.

**B.      Defendants' Motion to Exclude or Limit the Testimony of Plaintiff's Purported Expert Roger Clark**

Defendants have moved to exclude Carr's expert Roger Clark.  Dkt. 66.  Carr has designated Clark as an expert in police practices.  Dkt. 46 at 2.  Clark worked as a police officer for twenty-seven years in a number of different roles and has frequently given expert testimony since his retirement.  Dkt. 46, Exs. 1, 3.

8

The party offering expert testimony has the burden to prove by a preponderance of the evidence that the proffered testimony satisfies the admissibility requirements of Federal Rule of Evidence 702. *Mathis v. Exxon Corp.*, 302 F.3d 448, 460 (5th Cir. 2002). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In evaluating an expert's testimony under Rule 702, the court takes on a "gatekeeping role" and makes a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93, 597, 113 S. Ct. 2786 (1993). To admit an expert's testimony, the court must determine that it is both relevant and reliable. *Id.* at 589.

To establish reliability, the party offering the expert testimony need not show that the expert's assessment is correct. Fed. R. Evid. 702, Advisory Comm. Note (2000); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). However, the court need not admit testimony based purely on the *ipse dixit* of the expert. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512 (1997). In making the reliability determination, the Supreme Court has indicated that the trial court should consider whether the expert's theory or technique (1) can or has been tested, (2) is subject to peer review and publication, (3) has a high known or potential error rate or standards controlling its operation, and (4) is generally accepted in the relevant scientific community. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149, 119 S. Ct. 1167 (1999) (citing *Daubert*, 509 U.S. at 592-94).

9

Importantly, these factors are not a definitive checklist and may not be relevant to assessing the expert's reliability in every case.  *Id.* at 150.

Although the court's gatekeeping obligation applies to both scientific and non-scientific expert testimony, the factors listed in *Daubert* are more difficult to apply to non-scientific experts. *See Berry v. City of Detroit*, 25 F.3d 1342, 1349 (6th Cir. 1994) (noting that some of the pronouncements in *Daubert* had limited application in the context of non-scientific testimony). Therefore, the court's gatekeeping inquiry will vary depending on the nature of the case before the court, the expert's particular expertise, and the subject of his testimony.  *Kumho Tire Co.*, 526 U.S. at 150.  Nonetheless, the court will apply the same level of scrutiny to scientific and non-scientific expert testimony.  *See* Fed. R. Evid. 702, Advisory Comm. Note (2000) ("While the relevant factors for determining reliability will vary from expertise to expertise, the amendment rejects the premise that an expert's testimony should be treated more permissively simply because it is outside the realm of science.").

### 1.      Clark's Qualifications and the Basis of his Opinions

Before addressing the opinions Clark offers in his expert report, Defendants make several objections regarding Clark's expertise and the factual basis of his opinions.  Defendants first argue that Clark's deposition testimony indicates a lack of understanding of certain legal standards applicable to this case, such as whether a "knock-and-talk" is appropriate in these circumstances under Fifth Circuit precedent. Dkt. 66 ¶ 1.  However, Clark is not a legal expert and has not been asked to give opinions about the appropriate legal standards applicable to this case.  Rather, Clark has been asked to testify about his experience with police practices.  Dkt. 46 at 2.  Clark certainly would not be qualified to testify as to his interpretation of Fifth Circuit case law, but he has made no attempt to do so in his expert report.  *See* Dkt. 46, Ex. 1.  The court will not disqualify Clark as

an expert on police practices merely because defense counsel questioned him on legal subjects that are outside the scope of his expertise.

Defendants also argue that Clark bases his opinions on two unreliable sources of factual information: (i) the edited "Texas Takedown" video, and (ii) this court's opinion on a motion to dismiss, in which the court took Carr's version of the facts as true for the purposes of considering the motion. Dkt. 66 ¶ 2. Additionally, Defendants complain that Clark failed to make an adequate investigation into the facts and circumstances of the case. *Id.* ¶¶ 11, 15. These arguments, however, do not address the admissibility of Clark's testimony. "[T]he factual basis of an expert's opinion goes to the credibility of the testimony not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Perez v. City of Austin*, No. A-07-CA-044, 2008 WL 1990670, at *5 (W.D. Tex. May 5, 2008) (citation and internal quotation marks omitted); *see also* Fed. R. Evid. 702, Advisory Comm. Note (2000) (noting that "experts sometimes reach different conclusions based on competing versions of the facts" and that the trial court may not exclude an expert merely because the court believes a particular version of the facts); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) ("The fact-finder is entitled to hear [the expert's] testimony and decide whether it should accept or reject that testimony after considering all factors that weigh on credibility, including whether the predicate facts on which [the expert] relied are accurate."). Although Clark's testimony must be based on "sufficient facts" under Rule 702(b), the court cannot conclude that the factual basis of Clark's testimony is insufficient simply because he relied more heavily on Carr's version of the facts. Defendants can cross examine Clark at trial regarding whether the factual basis for his opinions is complete and accurate, but the court will not exclude his testimony on this basis.

Defendants also suggest that Clark has not applied any accepted methodology. Rather, he improperly based his testimony on his "personal policies"—the policies his precinct followed when he was a police officer. Dkt. 66 ¶¶ 3, 13. The court agrees that Clark could not testify based on his personal policies because those policies are irrelevant to this case. However, Clark referenced his personal policies only in response to a line of questioning about the best way for police officers to enter a drug operation. Dkt. 66, Ex. 1 at 81-83. In answering those questions, he drew from his own experience regarding how he approached similar situations as a police officer. *Id.* Nonetheless, his deposition testimony does not indicate that his expert report is based on his personal policies. His report states that his testimony is based on his application of the Texas Commission on Law Enforcement Officers Standards and Education (TCOLE) curriculum, which is relevant to this case. *See* Dkt. 46, Ex. 1. Contrary to Defendants' assertions, the court finds that the standards outlined in the TCOLE curriculum constitute a sufficiently reliable methodology to serve as a basis for expert opinion. *Cf. Tolan*, 2015 WL 5310801, at *3 (noting that TCOLE "ha[s] been found to comply with constitutional requirements" and "has been deemed adequate by the State of Texas to prepare officers to competently perform the duties of their office"). Further, the court disagrees with Defendants' assertion that Clark's conclusions are unreliable merely because they have not been subject to peer review. Dkt. 66 ¶ 10. As stated, the court's gatekeeping inquiry varies depending on the expert's particular expertise, and the *Daubert* factors are not relevant in every case. *Kumho Tire Co.*, 526 U.S. at 150. Clark's anticipated testimony, based on his experience as a police officer, is not the type of testimony that is readily subject to peer review. Defendants may address Clark's methodology on cross examination, but it is not currently clear that Clark has applied improper or unreliable principles in his analysis of this case. *See Daubert*, 509 U.S. at 595 ("Vigorous cross-

examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Defendants also complain that Clark has no knowledge regarding (1) whether the officers could have smelled or seen marijuana, (2) the characteristics of the area where the officers were standing when they smelled marijuana, or (3) the particular type of "hydroponic grow operation" at issue in this case.  Dkt. 66 ¶ 4.  Although these topics were raised in Defendants' deposition of Clark, he has not offered any opinions on these subjects in his expert report.  If Clark attempted to testify as to the details of hydroponic grow operations at trial, Defendants may have a valid objection that the testimony is outside the scope of his expertise.  Currently, however, Defendants' objections are premature.

### 2.    Clark's Opinions

In addition to Defendants' general objections to Clark's testimony, Defendants have objected to each of the eleven opinions Clark offered in his expert report.  Defendants argue that Clark's opinions either constitute legal conclusions, are based on unsupported factual assumptions, or are unnecessary and irrelevant.  *See* Dkt. 66 ¶¶ 16-42.  Carr has offered one essentially identical response to each of Defendants' objections: "This opinion is helpful to the jury and is an allowable [opinion] based upon Mr. Clark's training and experience.  See Exhibit 1, resume of Clark.  Experts may opine about the ultimate issue in a case. FRE 704."  Dkt. 68.  The court will address each of Clark's opinions in turn.

Clark's first opinion states:

> All Law Enforcement, including the defendant officers in this case, are required to know the law and are not excused for their ignorance of the law.  [Harlow v. Fitzgerald, 457 U.S. 800 (1982)]

Dkt. 46, Ex. 1 at 9.  Clark may not properly testify as to this opinion.  Clark is not a legal expert, and

this opinion merely states a point of law.  It is the province of the judge, not an expert, to instruct the

jury on the legal standards applicable to the case.  *See Burkhart v. Wash. Metro. Area Transit Auth.*,

112 F.3d 1207, 1213 (D.C. Cir. 1997) ("Each courtroom comes equipped with a 'legal expert,' called

a judge, and it is his or her province alone to instruct the jury on the relevant legal standards."); *see*

*also Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) (noting that an expert "is not qualified to

compete with the judge in the function of instructing the jury").  Therefore, Defendants' motion to

exclude Clark's testimony as to Opinion 1 is GRANTED.

Clark's second opinion states:

> Chief Barry Welch, who was the supervisor on the scene, did not
> follow the guidelines required of every TCLEOSE/TCOLE certified
> Law Enforcement Officer/Constable in this incident.  Additionally,
> under the document circumstances of this incident, the record does
> not support any exigency or viable purpose for entering Ms. Carr's
> residence.  Therefore, no TCLEOSE/TCOLE certified and reasonably
> trained Constable, including Chief Barry Welch, would have entered
> Ms. Carr's residence without prior warrant or probable cause.  It
> cannot be overstated that Ms. Carr and Zachary were sleeping;
> therefore, no exigency existed justifying the entry into the Carr
> residence.

Dkt. 46, Ex. 1 at 9.  The second, third, and fourth sentences of this opinion are impermissible legal

conclusions.  Carr is correct to point out that Federal Rule of Evidence 704 states that "[a]n opinion

is not objectionable just because it embraces an ultimate issue."  Fed. R. Evid. 704(a).  However, the

advisory committee notes and the case law interpreting Rule 704 make clear that this rule does not

allow a witness to express an ultimate *legal* conclusion.  *See* Fed. R. Evid. 704, Advisory Comm.

Note (1972) (noting that Rule 704 is not intended to permit a witness to "merely tell the jury what

result to reach" or offer opinions "phrased in terms of inadequately explored legal criteria"); *United*

*States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977) ("Rule 704 abolishes the per se rule against

14

testimony regarding ultimate issues of fact.  By the same token, however, courts must remain vigilant against the admission of legal conclusions, and an expert witness may not substitute for the court in charging the jury regarding the applicable law."); *see also In re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1233 (5th Cir. 1986) ("[T]he trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument.").  In sentences two and four of this opinion, Clark denies that any exigency existed in this case.  At trial, the jury will have to determine whether a viable exigency supported Defendants' decision to enter Carr's home.  Clark may not simply instruct the jury that no exigency existed.  *See Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988) (finding that the district court erred in allowing an expert to testify that warrantless searches are unlawful and that no exception to the warrant requirement excused the defendants' conduct).  Similarly, in sentence three of his opinion, Clark indicates that a reasonably trained officer would not have entered Carr's home.  The reasonableness of the officer's conduct, however, is an ultimate legal issue in the case.  Therefore, Clark cannot tell the jury that Defendants' did not behave as reasonable officers.  *See, e.g.*, *DeMerrell v. City of Cheboygan*, 206 F. App'x 418, 426-27 (6th Cir. 2006) (holding that the district court properly excluded an expert report where the purported expert opinion stated that "a reasonable officer on the scene would not have concluded at the time that there existed probable cause that [plaintiff] posed a significant threat of death or serious physical injury").

The court will, however, allow Clark to testify to the first sentence of this opinion.  Clark may testify as to his interpretation of the TCOLE curriculum and whether the curriculum's rules were followed in this case.  As stated above, Defendants' concerns about the factual basis of Clark's opinions and his interpretation of the TCOLE curriculum may be addressed in cross examination.  Further, Defendants may object at trial to any opinions based on Clark's personal policies rather than the policies set forth in the TCOLE curriculum.  Therefore, Defendants' motion to exclude Clark's

15

testimony as to the second, third, and fourth sentence of Opinion 2 is GRANTED, and Defendants'

motion to exclude Clark's testimony as to the first sentence of Opinion 2 is DENIED.

Clark's third opinion states:

> At the time of the incident, Constable Looza was a Corporal and is now a Sergeant.  Accordingly, all personnel present understood Montgomery County Sheriff's Department policy and the law (as licensed TCOLE law enforcement officers).

Dkt. 46, Ex. 1 at 9.  This opinion is not a proper subject of expert testimony because it is not helpful

to the jury.  This opinion merely states the fact that the constables were licensed under the TCOLE

curriculum and thus understood its policies.  Defendants do not dispute this fact.  Dkt. 66 ¶ 32.

Expert testimony that simply states undisputed facts does not serve its intended purpose of helping

the jury make factual determinations.  *See* Fed. R. Evid. 702(a) (requiring that expert testimony help

the trier of fact understand the evidence or determine a fact in issue).  Testimony as to undisputed

facts is the realm of a fact witness, not an expert.  *Nobel Ins. Co. v. Guillory*, No. 3:00-CV-0141,

2000 WL 35608155, at *2 (N.D. Tex. Apr. 19, 2000) (requiring purported experts to testify as fact

witnesses where their anticipated testimony consisted of undisputed facts rather than expert opinion).

Therefore, Defendants' motion to exclude Clark's testimony as to Opinion 3 is GRANTED.

Clark's fourth opinion states:

> Officers are trained and are expected to know that there was no law enforcement reason to have either the cameraman with camera or the newspaper reporter in Ms. Perla Carr's residence and such actions were unreasonable.

Dkt. 46, Ex. 1 at 9.  This opinion is a legal conclusion about the reasonableness of the officers'

conduct.  Moreover, this opinion is not helpful to the jury.  The court has already ruled that, as a

matter of law, police officers violate the Fourth Amendment when they bring third parties to the

search of a home for a private purpose. Dkt. 25 at 8-9.  Further, the court has ruled that this principle

16

is well settled. *Id.* at 9.  Therefore, such conduct is, by definition, constitutionally unreasonable.  Clark's opinion is a legal conclusion and provides no relevant additional information that would be helpful to the jury on this point.  Defendants' motion to exclude Clark's testimony as to Opinion 4 is GRANTED.

Clark's fifth, sixth, and seventh opinions state, in varying forms, that Defendants acted unreasonably in entering and searching Carr's home.  Dkt. 46, Ex. 1 at 10.  These opinions are impermissible legal conclusions because they intend to resolve the ultimate legal issue in Carr's unreasonable search and seizure claim—whether the search of Carr's home was constitutionally reasonable.  Many courts have noted in similar circumstances that such testimony is inappropriate.  *See, e.g.*, *McBroom v. Payne,* 478 F. App'x 196, 200 (5th Cir. 2012) (holding that "whether an officer's use of his firearm was unreasonable for purposes of the Fourth Amendment is a legal conclusion"); *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003) (holding that the trial court erred by admitting testimony that a shooting was "unreasonable" because "[r]easonableness under the Fourth Amendment or Due Process Clause is a legal conclusion"); *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995) (finding that the district court abused its discretion by admitting expert testimony "concerning the reasonableness of the officers' conduct in light of 'Fourth Amendment standards'").  Therefore, Defendants' motion to exclude Clark's testimony as to Opinions 5, 6, and 7 is GRANTED.

Clark's eighth and ninth opinions state that Constable Hayden unreasonably failed to properly supervise his officers during the events giving rise to this case.  Dkt. 46, Ex. 1 at 10.  These opinions are also impermissible legal conclusions.  The sufficiency of Constable Hayden's supervision and the reasonableness of his actions are the ultimate legal issues to be decided by the jury in resolving

the supervisory liability claim against Constable Hayden.  Therefore, Defendants' motion to exclude

Clark's testimony as to Opinions 8 and 9 is GRANTED.

> Clark's tenth opinion states:

>> The unconstitutionality of the break-in and search and bringing in the camera man and newspaper reporter was/is well-established under the law.

*Id.*  Clark may not properly testify to this opinion.  Clark may not reach the legal conclusion that the

officers' conduct was unconstitutional.  Further, Clark is not a legal expert and may not testify to

what is well established under the law.  As stated above, it is the judge's role to instruct the jury on

the state of the law.  Therefore, Defendants' motion to exclude Clark's testimony as to Opinion 10

is GRANTED.

> Clark's eleventh opinion states:

>> Constable Hayden is the highest elected official in the Montgomery County Constable's Office and a county policymaker on searches and seizures and media presence at his police activities.

*Id.*  This opinion is not helpful to the jury and is not a proper subject of expert opinion.  The court

has already ruled in this case that Carr presented insufficient facts to support a claim that Constable

Hayden had established a policy of conducting unreasonable searches and seizures.  Dkt. 25 at 14.

Further, the term "policymaker" is a legal term of art with a particular meaning in this context.

Therefore, it would be inappropriate for Clark to testify that Constable Hayden is a "policymaker."

*See Torres v. Cnty. of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985) ("[I]t is often difficult to

determine whether a legal conclusion is implicated in the testimony.  The best resolution of this type

of problem is to determine whether the terms used by the witness have a separate, distinct and

specialized meaning in the law different from that present in the vernacular.  If they do, exclusion

is appropriate." (citations omitted)); *see also Burkhart*, 112 F.3d at 1213 (holding that expert testimony constituted an impermissible legal conclusion where it invoked legal terms of art). Therefore, Defendants' motion to exclude Clark's testimony as to Opinion 11 is GRANTED.

### III. CONCLUSION

Defendants' motion to exclude the testimony of plaintiff's medical experts (Dkt. 51) is GRANTED.

Defendants' motion to exclude or limit the testimony of plaintiff's purported expert Roger Clark (Dkt. 66) is GRANTED IN PART and DENIED IN PART.  It is DENIED with respect to the first sentence of Opinion 2 in Clark's expert report.  *See* Dkt. 46, Ex. 1.  It is GRANTED in all other respects.

Signed at Houston, Texas on October 7, 2015.

_____
Gray H. Miller
United States District Judge